UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMARA KABBA,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>ALBERTO R. GONZALES, et al.,<br><br>　　　　Respondents. | CASE NO.  C06-1510-JLR-MJB<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Amara Kabba, a.k.a, Omar Jaiteh, is a native and citizen of The Gambia who is being detained by the United States Immigration and Customs Enforcement ("ICE") pursuant to an order of removal that became final on August 30, 2005. On October 18, 2006, he filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the statutory and constitutional authority of ICE to detain him any further due to the unlikelihood of his removal from the United States in the reasonably foreseeable future. (Dkt. #3). Petitioner requests that he be released from custody pending his removal from the United States. Respondents contend that petitioner's detention is permitted by Section 241(a)(1)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(1)(C), because he is subject to a final order of removal and his detention is not indefinite. (Dkt. #20).

REPORT AND RECOMMENDATION
PAGE – 1

Having carefully reviewed the entire record, I recommend that petitioner's habeas petition (Dkt. #3) be DENIED and respondents' motion to dismiss (Dkt. #20) be GRANTED.

## II. BACKGROUND AND PROCEDURAL HISTORY

Petitioner Amara Kabba, a.k.a., Omar Jaiteh, first entered the United States with his brother, Aboudou Kabba, a.k.a. Abdoulie Jaiteh, on April 15, 2002, as a B-2 non-immigrant visitor for pleasure with a Gambian passport. (Dkt. #23 at R104, L288). On July 21, 2003, petitioner filed a petition for asylum, claiming he was a native and citizen of Sierra Leone, who had entered the United States on August 1, 2002. (Dkt. #23 at L1-4).

ICE referred petitioner's case to an Immigration Judge ("IJ"), and on October 23, 2003, served petitioner with a Notice to Appear, charging him with removability under INA § 237(a)(1)(A), because he did not possess or present a valid immigration document upon his admission to the United States as required by the Act. (Dkt. #23 at L8). In his removal proceedings, petitioner sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). (Dkt. #23 at L117). On July 29, 2004, the IJ issued an oral decision denying petitioner's applications for relief from removal, and granting him voluntary departure to Sierra Leone with an alternate order of removal to Sierra Leone. (Dkt. #23 at L221). Petitioner appealed the IJ's decision to the Board of Immigration Appeals, who dismissed the appeal on August 30, 2005. (Dkt. #23 at L257-58). Petitioner did not seek further review, and his order of removal became administratively final on August 30, 2005.

On September 7, 2005, ICE took petitioner into custody for removal to Sierra Leone. (Dkt. #23 at R30). However, officials from the Embassy of Sierra Leone refused to issue a travel document because petitioner had not "proven to be a bonafide citizen of the Republic of Sierra Leone." (Dkt. #23 at R45). On February 1, 2006, ICE released petitioner from custody on an order of supervision. (Dkt #23 at L278-81).

REPORT AND RECOMMENDATION
PAGE – 2

After further investigation, ICE confirmed that petitioner's true identity was Omar Jaiteh, a native and citizen of Gambia, who entered the United States on April 15, 2002, as a B-2 non-immigrant visitor, using a Gambian passport. (Dkt. #20, Ex. A).

On May 5, 2006, ICE revoked petitioner's order of supervision and took him back into immigration custody. On May 31, 2006, ICE requested a travel document for petitioner from the Embassy of Gambia, asserting that petitioner was a native and citizen of Gambia, and that he had come to the United States on a visitor's visa from Gambia. ICE further asserted that Gambian officials had already issued a travel document for petitioner's brother on May 11, 2006. (Dkt. #23 at R95). Petitioner's brother was removed to Gambia on June 6, 2006. (Dkt. #23 at R103).

On June 7, 2006, petitioner participated in an interview with Gambian embassy officials. ICE subsequently contacted the embassy on June 23, July 7 and 27, August 14 and 30, September 6, 7, 8, and 12. The embassy official indicated that he was still waiting for a response from Gambia. (Dkt. #23 at R101).

On August 31, 2006, ICE conducted a "Post Order Custody Review." (Dkt. #23 at R97-104). The reviewing officer recommended that petitioner remain in ICE custody for an additional 90 days while continuing efforts are made to secure his travel document, stating that

> if [petitioner] is released prior to the issuance of his travel document, he would likely abscond since ICE has discovered his true identity. The reviewing officer further believes that once released [petitioner] would assume another identity since he has demonstrated that he is more than capable of doing so.

(Dkt. #23 at R98). On September 18, 2006, ICE issued a decision informing petitioner that he would not be released from ICE custody, and that he would receive another filed custody review on or about November 30, 2006. (Dkt. #23 at R108).

### A. ICE's Motion to Reopen Petitioner's Removal Proceedings

On November 29, 2006, ICE filed a motion to reopen petitioner's immigration

REPORT AND RECOMMENDATION
PAGE – 3

1. proceedings in order to re-issue a Notice to Appear and re-designate the country of removal to
2. Gambia. (Dkt. #29, Ex. B). On January 25, 2007, the BIA reopened petitioner's removal
3. proceedings and remanded to the Immigration Judge for further proceedings, stating that, "we
4. will exercise our sua sponte authority as we find exceptional circumstances here." (Dkt. #29,
5. Ex. A). On February 1, 2007, after the BIA reopened petitioner's removal proceedings, ICE
6. officials made an initial custody determination pursuant to INA § 236, 8 U.S.C. § 1226, and
7. denied petitioner release on bond. (Dkt. #29, Ex. C). On February 15, 2007, the IJ held a
8. hearing and issued a decision ordering petitioner removed to Gambia. Petitioner waived appeal
9. of the IJ's decision. (Dkt. #29, Ex. D). Accordingly, petitioner's order of removal became
10. administratively final on February 15, 2007.

   B.  Removal Efforts

   On January 17, 2007, Deportation Officer Kathy Makaena facilitated a second telephonic interview between petitioner and a Gambian embassy official. (Dkt. #31). Following the interview, ICE contacted the embassy official who stated that he would continue to work with the Gambian government to confirm petitioner's identity and citizenship. (Dkt. #30).

   ### III. DISCUSSION

   Petitioner argues that he has been detained beyond the six month presumptively reasonable period in *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 2504-05, 150 L. Ed. 2d 653 (2001), and that he is therefore entitled to release from detention. Respondents contend that petitioner's removal order became final on February 15, 2007, and that petitioner's argument is now moot because ICE's statutory authority to detain him shifted back to Section 241 of the INA. (Dkt. #29 at 4 n.2). The Court finds that the issue is not ripe for adjudication.

   Where, as here, a final order of removal has been issued, the Attorney General has an obligation to facilitate the alien's removal from the United States within a ninety day removal

REPORT AND RECOMMENDATION
PAGE – 4

period.  INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following:

    (i) The date the order of removal becomes administratively final.

    (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

    (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

INA § 241(a)(1)(B), 8 U.S.C. § 1231(a)(1)(B); *see also Khotesouvan v. Morones*, 386 F.3d 1298, 1300 n.3 (9th Cir. 2004) (stating that the 90-day removal period commences on "the date the order of removal becomes final; the date a reviewing court lifts its stay following review and approval of the order of removal; or the date the alien ordered removed is released from non-immigration related confinement.").  During the removal period, continued detention is statutorily required.  INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien.").  The statute also permits detention beyond the removal period where removal cannot be accomplished within ninety days.  INA § 241(a)(6) provides:

> An alien ordered removed who is inadmissable under section 1182 of this title, removable under section 1227(a)(1)(C), 1227 (a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute, INA § 241(a)(6), does not permit indefinite detention, but "implicitly limits an alien's [post-removal-period] detention to a period reasonably necessary to bring about the alien's removal from the United States."  *Zadvydas*, 121 S. Ct. at 2498.  In determining what is a reasonable removal period, the Court adopted "for the sake of uniform administration in the federal

REPORT AND RECOMMENDATION
PAGE – 5

courts," *id.* at 2505, a "presumptively reasonable period of detention" of six months. *Id.* "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* However, where an alien seeks release prior to the expiration of the presumptive six-month period, his claims are unripe for federal review. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("This six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under Zadvydas.").

In the present case, the BIA reopened petitioner's removal proceedings on January 25, 2007, rendering petitioner's August 30, 2005 order of removal non-final. *Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002) (holding that the grant of a motion to reopen renders a removal order non-final). On February 15, 2007, the Immigration Judge ordered petitioner removed to Gambia, and petitioner waived his right to appeal the IJ's decision. Therefore, petitioner's order of removal became administratively final and the removal period began to run on February 15, 2007. Accordingly, petitioner's ninety-day removal period will expire on May 16, 2007, and the six month presumptively reasonable post-removal period will expire on August 14, 2007. Thus, petitioner's habeas petition is not ripe for review.

Accordingly, I recommend that respondents' motion to dismiss be granted, and that petitioner's habeas petition be dismissed without prejudice for lack of ripeness. Should petitioner's detention continue past the six month presumptive period under *Zadvydas*, he may file a new habeas petition.

//

//

//

REPORT AND RECOMMENDATION
PAGE – 6

IV.  CONCLUSION

For the foregoing reasons, I recommend that petitioner's habeas petition be DENIED, that respondents' motion to dismiss be GRANTED, and that this matter be dismissed without prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 19th day of March, 2007.

*/s/ Monica J. Benton*

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE – 7